UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MITCHELL WOOD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18 CV 133 ACL ) |
| JUSTIN WOOTEN, | ) ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

Plaintiff Mitchell Wood filed this action against Defendant Justin Wooten under 42 U.S.C. § 1983 for unreasonable seizure in violation of his Fourth Amendment rights. Presently pending before the Court is Defendant Justin Wooten's Motion for Summary Judgment. (Doc. 27.) Also pending is the Defendant's Motion to Exclude the Expert Testimony of Kevin Reaves and Lynda Hartwick. (Doc. 18.) For the reasons set forth below, the Motion for Summary Judgment will be granted.

I.  **Background**

As taken from Wooten's Statement of Uncontroverted Material Facts (Doc. 29), and Wood's Response to such (Doc. 31), the facts relevant to the motion are as follows:

Defendant Wooten was employed as a deputy sheriff of Scott County, Missouri, at all relevant times. On October 22-23, 2016, Plaintiff Wood was driving an automobile in Scott County. Scott County Deputy Sheriff Toby Haynes initiated a traffic stop on the vehicle Wood was driving due to an inoperable headlight. Wood confirmed the next day that the vehicle had a headlight out and he changed it. Haynes pulled Wood's vehicle over after midnight, at around

1:34 a.m. Wood produced his license and insurance card to Haynes. Haynes went back to his patrol vehicle to have communications run Wood's identification for driving status.

Dispatch at the Scott County Sheriff's Department told Haynes that Wood had a warrant for a City of Dexter ticket. Dispatch verified the warrant upon Haynes' request. Wood does not contest that there was a warrant outstanding for his arrest when Haynes stopped him.[1] Haynes called Wooten on his cell phone from the site of the traffic stop to advise him that Wood was Shawn Wood's husband and that Wood had an outstanding warrant on a traffic ticket from Dexter.[2] Wooten told Haynes that he would call the Sheriff and then call Haynes back. Wooten contacted the Sheriff, who told Wooten to treat Wood like anyone else and bring him in if he has a warrant. Wooten called Haynes back and told him to bring Wood in on the warrant.

Haynes never told Wood that he was under arrest and Wood did not believe he was under arrest at that time. Haynes did not handcuff Wood. Wood rode in the front seat of Haynes' patrol car during the fifteen-minute ride from the location of the stop to the jail.

Upon arriving at the Scott County Sheriff's Department in the early morning of October 23, 2016, Wood and Haynes were met by Wooten in the parking lot. Haynes and Wooten talked about the headlight being out and the warrant for Wood's arrest. Wooten handcuffed Wood and told him that he was under arrest for driving while intoxicated ("DWI").[3]

---

[1]Wood objects to Defendant's statements of fact regarding what Dispatch told Haynes, on the basis that it constitutes inadmissible hearsay. (Doc. 31 at §§ 9, 11.) "It is not improper….for an officer to rely on hearsay to establish the facts to support an arrest or charge." *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017). Wood's hearsay objections will, therefore, be overruled.

[2]While not relevant to the determination of the Motion for Summary Judgment, Plaintiff Wood and his wife Shawn Wood were separated at the time of the traffic stop, and it was rumored that Shawn Wood and the Sheriff were involved in a romantic relationship. When Plaintiff Wood advised Haynes of the identity of his spouse, Haynes contacted Wooten for guidance.

[3]As noted, the parties dispute the validity of the DWI arrest by Wooten. For clarity, the record reflects that both Haynes and Wooten detected an odor of alcohol on Wood's breath when he

In his Complaint, Wood asserts a single cause of action against Wooten in his individual capacity pursuant to 42 U.S.C. § 1983. Wood alleges that Wooten unlawfully arrested him without probable cause for DWI. He claims that Wooten, in arresting and jailing Wood and causing a mug shot to be taken of Wood without a warrant or probable cause, made an unreasonable seizure in violation of Wood's Fourth Amendment right to be free from unlawful arrest and seizures. Wood claims that, as a direct result of Wooten's actions, he suffered emotional harm and distress and monetary loss. Specifically, Wood alleges that he was forced to resign from his job as Superintendent of Schools and suffered humiliation and ridicule. He seeks compensatory damages, punitive damages, and attorney's fees.

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985

---

arrived at the Sheriff's Department. According to Haynes, Wood admitted he had drunk alcohol. Upon noticing that odor, Wooten placed Wood under arrest for suspicion of DWI. (Doc. 32-3 at 18.) Shortly thereafter, Haynes administered breath tests to assess the concentration of alcohol in Wood's blood. *Id.* at 21. The first test was ineffective because Wood did not blow into the tube correctly. *Id.* The second test revealed a blood alcohol concentration of .109, which is over the legal limit in Missouri. *Id*. at 22-25. This information was not considered in determining the Motion for Summary Judgment.

(8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo*., 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III. Discussion**

Wooten argues that he is entitled to summary judgment because the undisputed facts known by Wooten at the time of Wood's arrest objectively demonstrate that Wooten had probable cause to arrest Wood on the active arrest warrant and to arrest Wood for violating Missouri traffic law. He contends that the subjective reason that Wooten may have stated at the time of Wood's arrest is completely irrelevant in determining whether the facts known by Wooten at the time of the arrest objectively demonstrate that there was probable cause to arrest Wood. Wooten further argues that Wood's claim is barred by qualified immunity because the undisputed facts demonstrate that Wooten had at least arguable probable cause to arrest Wood and the controlling precedent in the Eighth Circuit did not clearly establish that Wooten's conduct in arresting Wood would violate Wood's Fourth Amendment rights.

In Response, Wood argues that the existence of the active arrest warrant does not play a role in the analysis. Wood contends that he was arrested for DWI, and not pursuant to the existing warrant. Similarly, Wood argues that because he was not arrested for an inoperable headlight and charges were never filed with regard to that violation, the inoperable headlight cannot provide probable cause for his arrest. Finally, Wood contends that qualified immunity does not apply because Wooten did not make a good faith reasonable mistake in arresting Wood for DWI but, rather, intentionally violated Wood's rights and forged evidence in connection with the arrest.

Wood also filed Plaintiff's Statement of Additional Material Facts, which consists primarily of alleged facts occurring after Wood's arrest. (Doc. 32 at p. 1-4.) For example, Plaintiff claims that Wooten forged a probable cause affidavit purportedly signed by Haynes

related to Wood's arrest for DWI; someone altered Haynes' narrative report without Haynes' knowledge or consent to add facts related to intoxicants; and Wooten was aware of rumors of Wood's estranged wife Shawn Wood having an affair with the Scott County Sheriff. Wooten has filed a Response to Wood's Statement of Additional Facts, and objects to the majority of the allegations on the basis they are irrelevant and immaterial to the issue of whether there was probable cause to arrest Wood. (Doc. 35.)

A.  **Plaintiff's Fourth Amendment Claim**

To support a claim under Section 1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the defendant's alleged conduct deprived the plaintiff of a constitutionally, protected federal right. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). There is no dispute that Wooten acted under color of state law. Rather, the parties dispute whether Wooten violated Wood's constitutional rights under the Fourth Amendment.

"The Fourth Amendment right to be free from unreasonable searches and seizures requires that arrests be based on probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1310 (8th Cir. 2014). "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). "'Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense.'" *Williams*, 772 F.3d at 1310 (internal alterations omitted) (quoting *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005)). As the Eighth Circuit Court of Appeals has clarified, "[T]he issue is whether the police officers had

6

probable cause to arrest [the person] for violating [a statute or ordinance], not whether he would have been convicted for violating [that statute or ordinance]." *United States v. Hawkins*, 830 F.3d 742, 746 (8th Cir. 2016).

It is firmly established that "an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright,* 844 F.2d 567, 569 (8th Cir. 1988) (citation omitted).

The facts relevant to Wood's arrest are largely undisputed. Wood admitted that his headlight was out when he was pulled over by Haynes after midnight on October 23, 2016. (Doc. 31 at ¶¶ 4, 5.) Missouri law provides that "[n]o person shall drive…any vehicle…on any street or highway during the times when lighted lamps are required unless such vehicle or combination of vehicles displays lighted lamps and illuminating devices as hereinafter in this chapter required." Mo. Rev. Stat. § 307.040.1. It further provides that "[a]t the times when lighted lamps are required, at least two lighted lamps shall be displayed, one on each side of the front of every motor vehicle…" Mo. Rev. Stat. § 307.105.1. The term "'when lighted lamps are required' means at any time from a half-hour after sunset to a half-hour before sunrise…" Mo. Rev. Stat. § 307.020(9). The violation of these provisions are infractions. Mo. Rev. Stat. §§ 307.040.2, 307.105.2.

"Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994). The Eighth Circuit has further held that officers have probable cause to arrest an individual for minor infractions, even if the offense is not "arrestable" under state law. *See United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010) (holding officer had probable cause to arrest for crime that was an infraction under Nebraska law); *United States v. Burtton*, 599 F.3d 823, 830 (8th Cir. 2010) (same).

7

Here, based on the undisputed facts at the time, Haynes had probable cause to arrest Wood for violation of Missouri traffic law for driving with an inoperable headlight at night. *See* Mo. Rev. Stat. §§ 307.040, 307.105. Wooten was aware that Wood had been driving with one headlight because Haynes conveyed this information to him. Although Wood disputes that Haynes informed Wooten about the headlight during their telephone communications at the scene of the stop, he admits Haynes and Wooten discussed the headlight violation in person in the parking lot of the jail prior to Wood's arrest. (Doc. 31 at ¶ 24.)

Wooten was entitled to rely on Haynes' statements in determining if there was probable cause to arrest Wood. *See Riddle v Riepe*, 866 F.3d 943, 948 (8th Cir. 2017) (officers may rely on hearsay to establish the facts to support an arrest or charge); *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018) (probable cause may be based on the collective knowledge of all law enforcement officers involved in investigation), *cert. denied*, 139 S. Ct. 349 (2018).

Wooten also had probable cause to arrest Wood on the active arrest warrant. The undisputed facts reveal that there was an active arrest warrant for Wood for a City of Dexter traffic violation. Dispatch verified the warrant upon Haynes request, and Haynes communicated this information to Wooten at the scene of the stop and again in the parking lot of the jail. Haynes was entitled to rely on the hearsay statement from Dispatch, just as Wooten was in turn entitled to rely on Haynes' hearsay statement. Wood was not placed under arrest at the scene of the traffic stop. Wooten was aware of the active arrest warrant prior to arresting Wood, as he directed Haynes to bring Wood in on the warrant. The valid arrest warrant, therefore, serves as an independent basis providing probable cause for Wood's arrest.

Wood argues that neither the existence of the active arrest warrant nor the headlight violation provide probable cause for his arrest because he was not arrested for these reasons but

8

was instead arrested for DWI. He notes that Wooten cites *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988), for the proposition that "[a]n arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." Wood contends that this holding does not aid Wooten because Wood was not arrested *pursuant to* the warrant.

It is undisputed that Wooten told Wood he was under arrest for DWI rather than the Dexter warrant or the traffic violation. Nevertheless, Wood's argument that Wooten's stated grounds for arrest means that probable cause was lacking is misplaced.

An arresting officer's "subjective intentions play no role in ordinary probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). In *Devenpeck v. Alford*, the United States Supreme Court examined probable cause in the context of an arrest and held that even if an officer invokes the wrong offense at the time of an arrest, probable cause for the arrest still exists as long as the facts known to the officer would provide probable cause to arrest for the violation of some other law. 543 U.S. at 153.

The Eighth Circuit Court of Appeals has similarly recognized that the validity of an arrest does not turn on the reason stated for the arrest. *See Greenman v. Jessen*, 787 F.3d 882, 889 (8th Cir. 2015) ("even if [the arresting officer] cited a different offense when he arrested [the plaintiff], 'probable cause for the arrest still exist[ed] as long as the facts known to the officer would provide probable cause to arrest for the violation of some other law'") (quoting *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014)). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Demalia,* 771 F.3d at 1054 (quotation omitted). S*ee also Rodgers v. Knight,* 781 F.3d 932, 939 (8th Cir. 2015) (officers had probable cause to arrest plaintiff when there was a warrant

9

for his arrest based on failure to appear; warrant "justified the seizure whether or not other reasons articulated by the officers—including unlawful use of a weapon—were also sufficient"); *United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981) ("the validity of the arrest should be judged by whether the arresting officers actually had probable cause for the arrest, rather than by whether the officers gave the arrested person the right reason for the arrest"). Indeed, the Eighth Circuit Court of Appeals "ha[s] upheld the lawfulness of an arrest based on probable cause even where the arresting officers testified that they believed probable cause was lacking." *Bowden v. Meinberg*, 807 F.3d 877, 881 (8th Cir. 2015) (citing *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1439-41 (8th Cir. 1989)).

Wood's reliance on *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988), is unavailing. In *Fair*, the Eighth Circuit simply held that the arrest of an individual with an active arrest warrant does not give rise to a cause of action for false arrest. *Id*. at 569. Contrary to Wood's suggestion, *Fair* did not hold that the arresting officer's subjective reason for making the arrest is relevant in determining whether probable cause exists. Wood attempts to place undue emphasis on the Court's use of the word "pursuant to." The well-established law discussed above reveals that the subjective intent of the officer is irrelevant to the probable cause analysis. Thus, the relevant inquiry is whether the facts known to the officers at the time Wood was arrested would have provided probable cause to arrest Wood for the violation of *some law*. In this case, Wooten had probable cause to arrest Wood on both the active warrant and for violating Missouri traffic law.

Wood next argues that, even assuming he was legitimately arrested for a broken headlight or the Dexter warrant, he can only be held long enough to process those offenses and any delay longer than that is unreasonable. Wood cites *Wayland v. City of Springdale, Ark.*, 933 F.2d 668

(1991) and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) in support of these propositions. In *Wayland*, the Eighth Circuit held that police officers could be held liable for the detention of an individual for six days following a warrantless arrest, even though they had probable cause for the arrest and they were not responsible for the delay in arraignment. 933 F.2d at 670. The Court stated that the relevant inquiry was "whether the delay in arraignment was permissible," and a defendant may be detained "only for as long as it takes to process 'the administrative steps incident to arrest.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 1003, 114 (1975).

In *McLaughlin*, the Supreme Court held that probable cause determinations must occur no later than 48 hours after arrest. 500 U.S. at 56. The Court, however, noted that even probable cause determinations made within 48 hours may be found unreasonable. *Id.* Examples of such unreasonable delay "are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* The Court instructed that courts should allow a substantial degree of flexibility in evaluating whether a delay is unreasonable and cannot ignore "often unavoidable delays" such as those caused by transporting arrested persons from one facility to another, handling late-night bookings, obtaining the presence of an arresting officer, or "other practical realities." *Id.* at 57.

Here, although Wood accurately notes that a finding of probable cause for an arrest does not necessarily foreclose a claim of unreasonable delay, he offers no evidence of an unreasonable delay in this case. Neither party provides the exact time Wood arrived at the Scott County jail or the time he was released. It is undisputed that Wood was not pulled over by Haynes until approximately 1:30 a.m. on October 23, 2016, and that the drive from the site of the traffic stop to the jail was approximately fifteen minutes. Wood testified in his deposition that he was

11

released from the jail later that same morning. He did not recall the time he was released, but indicated that it was probably after 6:00 a.m. and it was before noon. (Doc. 32-7 at p 27.) During this time, he testified that he was processed and was placed on a bench in an open area of the jail rather than a jail cell. *Id.* Wood was ultimately released after the bond was posted on the Dexter warrant for the traffic violation. *Id.* at p. 27-28. Wood has cited no authority for a finding of unreasonable delay under these circumstances.

In sum, the undisputed facts known to Wooten at the time of Wood's arrest establish that he had probable cause to arrest Wood on both the active arrest warrant and for committing an infraction by driving at night with only one working headlight. Neither Wooten's stated reason for the arrest nor any other potential subjective motivations vitiate the lawfulness of Wood's arrest. Wood has presented no evidence supporting a finding that the duration of Wood's processing was unreasonably long. Moreover, the additional facts alleged by Wood regarding events occurring after the arrest are irrelevant to the issues presented in the instant motion and will not be discussed. For these reasons, Wooten is entitled to summary judgment on Wood's Fourth Amendment claim.

### B. Qualified Immunity

The Court declines to evaluate Wooten's qualified immunity defense, as the Fourth Amendment claim has already been resolved, eliminating the need to consider qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Justin Wooten's Motion for Summary Judgment (Doc. 27) is **granted.** A separate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that all pending motions be **denied as moot**.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of October, 2019.